UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GARY BUUS, SIDNEY JOHN FLOR, KELLIE PLUMB, THOMAS SCHOENLEBER, AUDREY SCHULMAN, and MARGARET WEBER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAMU PENSION PLAN and THE WASHINGTON MUTUAL PENSION PLAN ADMINISTRATION COMMITTEE,<br><br>Defendants. | Case No. C07-0903MJP<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DISMISSING PLAINTIFF AUDREY SCHULMAN |

Plaintiffs Gary Buus, Sidney John Flor, Kellie Plumb, Thomas Schoenleber, Audrey Schulman, and Margaret Weber move for class certification in their action alleging that Defendants WaMu Pension Plan and The Washington Mutual Pension Plan Administration Committee violated the Employee Retirement Income Security Act ("ERISA") by failing to give adequate notice of significant reductions in the rate of future benefit accrual. The Court GRANTS Plantiffs' motion in part and DENIES it in part. The Court DISMISSES Plaintiff Audrey Schulman from this action for lack of standing.

**Background**

This action stems from changes made to the WaMu Pension Plan and four other pension plans (collectively, "the Plans"). Plaintiffs allege Defendants or their predecessors in interest converted the Plans from final average pay plans to cash balance plans, and the amendments caused a significant reduction in the rate of future benefit accrual. (2d Am. Compl. ¶ 79.)

ORDER – 1

Plaintiffs allege that Defendants violated ERISA § 204(h), 29 U.S.C. § 1054(h), by failing to provide adequate notice when amending a plan to reduce the rate of future benefit accrual. (2d Am. Compl. ¶¶ 81, 83–84.) The Court dismissed several other claims in a December 18, 2007 order. (Docket # 41).

According to Plaintiffs' second amended complaint (the "complaint"), Washington Mutual ("WaMu") switched from using a final average pay formula to a cash balance formula effective January 1, 1987. (2d Am. Compl. ¶ 61.) Great Western Financial Corporation ("Great Western") converted its pension plan to a cash balance formula on January 1, 1997. (2d Am. Compl. ¶ 35.) When Great Western merged with WaMu, the Great Western Plan became part of the WaMu Plan. (2d Am. Compl. ¶¶ 37–38.) The WaMu Plan is the successor in interest to the Great Western Plan. (2d Am. Compl. ¶ 37.)

When WaMu acquired other corporations after January 1, 1987, it converted the pension plans of those corporations to the WaMu Plan. (2d Am. Compl. ¶¶ 40–57.) On the date of conversion, participants in each of the converted plans began accruing benefits according to the WaMu Plan's cash benefit formula. (2d Am. Compl. ¶¶ 44, 50, 56.) Ahmanson & Company's ("Ahmanson") pension plan became part of the WaMu Plan effective July 1, 1999. (2d Am. Compl. ¶ 43.) The Dime Bancorp, Inc. ("Dime") pension plan became part of the WaMu Plan effective April 1, 2002. (2d Am. Compl. ¶ 49.) The Pension Plan for Employees of Pacific First Bank ("Pacific First") became part of the WaMu Plan on April 1, 1994. (2d Am. Compl. ¶ 55.) Plaintiffs allege that Defendants (and implicitly, in the case of the Great Western Plan, defendants' predecessor in interest) failed to give adequate notice about the reduction in benefit accrual before, during, and after each of the plan conversions, in violation of ERISA § 204(h). (2d Am. Compl. ¶¶ 81, 83–84.)

The complaint names six plaintiffs: (1) Gary Buus ("Buus"), a former Great Western employee who continued to work for WaMu after the merger with Great Western, until 2001 (2d Am. Compl. ¶ 16); (2) Sidney Flor ("Flor"), who worked for WaMu since before 1987, but is now retired (2d Am. Compl. ¶ 17); (3) Kellie Plumb ("Plumb"), a former Pacific First employee who continued to work for WaMu after the merger with Pacific First, until 2006 (2d Am. Compl. ¶ 18); (4) Thomas Schoenleber ("Schoenleber"), who worked for WaMu since before 1987 and

ORDER – 2

is now retired (2d Am. Compl. ¶ 18.1); (5) Audrey Schulman ("Schulman"), a former Great Western employee who continued to work for WaMu after the merger with Great Western, but is now retired (2d Am. Compl. ¶ 19); and (6) Margaret Weber, a former Dime employee who continued to work for WaMu after the merger with Dime, but is now retired. (2d Am. Compl. ¶20.) The complaint does not list any of the named plaintiffs as having worked for Ahmanson.

## Discussion

### I. Defining the Proposed Class

Plaintiffs move to certify the following class:

> All Plan participants, whether active, inactive or retired, their beneficiaries and estates, whose accrued benefits or pension benefits are based in whole or in part on the Plan's and Predecessor Plans' cash balance formulas, from January 1, 1987 to the present for Count II, including but not limited to the cash balance formulas of the WaMu Predecessor Plans – the GW [Great Western] Plan, the Dime Plan, the Ahmanson Plan, and the PFB [Pacific First] Plan.

(Plaintiffs' Motion for Class Certification ("Plaintiffs' Mot.") at 3.)

#### A. Breadth of the Class Definition

As an initial matter, defendants argue that Plaintiffs' proposed class is overbroad and would include individuals who would not have a claim against Plaintiffs for lack of notice under § 204(h). (Defendants' Opposition to Class Certification ("Defendants' Opp."), pp. 5–6.) Defendants are correct in asserting that this definition is overbroad, and Plaintiffs do not argue otherwise in their reply brief. ERISA § 204(h) states in part that "[a]n applicable pension plan may not be <u>amended</u> so as to provide for a significant reduction in the rate of future benefit accrual unless the plan administrator provides the notice described in paragraph (2) to each applicable individual." 29 U.S.C. § 1054(h)(1) (emphasis added). The statute, on its face, only regulates amendments to plans. If plan participants join a plan after it has been amended, they are not entitled to notice under the statute because they have not had their rate of future benefit accrual reduced. Plaintiffs' proposed class includes individuals who became participants in the Plans after the dates of conversion to cash balance formulas. Because these individuals have no cause of action under § 204(h), Plaintiffs' proposed class is overbroad.

#### B. Subclasses are Appropriate Under Rule 23(c)(5)

Federal Rule of Civil Procedure 23(c)(5) enables district courts to break a class into subclasses "[w]hen appropriate." Each subclass is treated as an individual class, and must

ORDER – 3

independently meet the requirements of Rule 23. Fed. R. Civ. P. 23(c)(5); Betts v. Reliable Collection Agency, 659 F.2d 1000, 1005 (9th Cir. 1981). If each subclass meets Rule 23's requirements, the matter may proceed in a consolidated action even if the matter could not have been certified as a single, all-inclusive class under the rule. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 856 (1999) (discussing division into subclasses under Rule 23(c)(4)(B), the predecessor to Rule 23(c)(5)).

The Court finds it appropriate to divide the proposed class into proposed subclasses. Plaintiffs allege that participants in each of the five plans at issue (WaMu, Great Western, Ahmanson, Dime, and Pacific First) were given inadequate notice of a reduction in the rate of future benefit accrual when the plans converted to cash balance formulas. Different notices were given to the participants in each respective plan. (See, e.g., Carter Decl., Ex. 1 (Pacific First notice), Ex. 10 (WaMu notice), Ex. 11 (Great Western notice).) Plaintiffs must prove that each of the five notices was inadequate under ERISA § 204(h) to obtain relief for all the individuals they propose to represent. To evaluate the legal adequacy of each notice, the Court will be required to perform separate factual inquiries into the details of each notice. It is conceivable that, at trial, some notices will be found to be adequate under § 204(h), while others will not. For example, the Great Western notice states that the retirement benefit under the cash balance formula "may be more or less" than under the old formula, whereas other notices do not make such a declaration. (Carter Decl., Ex. 11, p. 3.) Due to the independent nature of each notice and the possibility of diverging outcomes on the merits, the Court finds it appropriate to divide the class into subclasses consisting of the participants in each converted plan.

Subclasses are particularly appropriate here because each of the notices applied to a discrete, easily identifiable subset of Plaintiffs' proposed class. For example, the Pacific First notice applied only to those individuals who were participants in the Pacific First plan. The participants in each plan can only raise a claim regarding the notice provided for that plan, not for the notices provided for any of the other plans. Each subclass can therefore be treated as its own independent class, as required by Rule 23(c)(5), without concern that particular individuals may have been influenced by notices for multiple plans.

The Court determines that Plaintiffs' proposed class will be divided into proposed

ORDER – 4

subclasses consisting of the individuals who participated in each converted plan. The Court also finds that each proposed subclass consists only of those individuals who were entitled to notice under § 204(h)—i.e. participants in the plans at the time of conversion to a cash balance formula—and whose accrued benefits or pension benefits are based in whole or in part on the cash balance formulas.

## II. Standing Considerations

The party invoking federal jurisdiction must establish standing as a prerequisite to obtaining relief. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). To establish Article III standing, Plaintiffs must show, among other things, that they have suffered injury in fact. Id. at 560. Prudential standing considerations require, among other things, that "a plaintiff's complaint fall within the zone of interests protected by the law invoked." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004).

### A. Named Plaintiffs Who Received a Lump-sum Payment of Benefits Have Standing

Defendants claim that at least three of the named plaintiffs, Flor, Schoenleber, and Weber, "cashed out" of the Plan by receiving a lump-sum payment of the entire balance in their Plan account. (Carter Decl., Ex 3, p. 252; Ex. 8; Ex. 12, p. 234.) Defendants argue that Flor, Schoenleber, and Weber lack prudential standing because they are no longer "participants" in the Plan as defined under ERISA. (Defendants' Opp., pp. 6–7.) ERISA permits "participants" to bring civil actions for relief against employers who have violated the substantive provisions of the statute. See 29 U.S.C. § 1132(a). ERISA further defines "participant" as "any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization . . . ." 29 U.S.C. § 1002(7).

The issue is whether former employees who "cashed out" of their plans by receiving a lump-sum payment are plan "participants" as defined above, and thus have standing to sue. The Supreme Court recently answered this question in the affirmative, stating, "[a] plan 'participant,' as defined by . . . § 1002(7), may include a former employee with a colorable claim for benefits."

ORDER – 5

LaRue v. DeWolff, Boberg & Assocs., Inc., 128 S. Ct. 1020, 1026 n.6 (2008). The plaintiff in LaRue sued under ERISA after his employer failed to make certain changes to the investments in his retirement plan account, resulting in a loss of account value. Id. at 1022–23. After the Court granted certiorari, the defendants filed a motion to dismiss, arguing that the case was moot because the plaintiff had withdrawn all his funds from the plan. Id. at 1026 n.6. The Court held that the case was not moot for the reasons quoted above. Id.

Defendants argue that LaRue is inapplicable because of the Court's use of the term "may include" instead of "does include" or some equivalent. (Defendants' Opp., p. 7, n.2.) The Court's determination that the case was not moot makes clear that a plan "participant" does include at least a former employee in LaRue's particular situation. The question therefore becomes whether LaRue's situation is materially distinguishable from that of Plaintiffs here.

Defendants argue that LaRue is distinguishable because, in that case, LaRue sought benefits to which he was entitled under the terms of the plan, whereas here Plaintiffs do not seek benefits under the terms of the plans but instead challenge the legality of those terms. (Defendants' Opp. at 7 n.2.) Defendants' argument is unpersuasive. Both the plaintiff in LaRue and the three Plaintiffs at issue here fully "cashed out" of their pension plans. Both the plaintiff in LaRue and Plaintiffs here alleged that a defendant's violation of ERISA resulted in receipt of fewer benefits than those to which he was legally entitled. The Plaintiffs here request equitable relief in the form of "the difference between the amount of the pension paid to them heretofore, and the benefit that should have been paid based on the Plan as reformed to cure all heretofore-listed ERISA violations." (2d Am. Compl., p. 25.) The plaintiff in LaRue similarly requested equitable relief in the form of benefits he would have received had the defendant not breached his fiduciary duty under ERISA. See LaRue, 128 S. Ct. at 1023. The Court finds no reason to assume that Congress intended to give a cause of action under ERISA to plaintiffs such as LaRue while denying a cause of action to plaintiffs such as Flor, Schoenleber, and Weber.

In addition, the Supreme Court's favorable citation of Harzewski v. Guidant Corp., 489 F.3d 799 (7th Cir. 2007), in reaching its holding regarding mootness indicates that the Court would likely establish a broad definition of "participant." In Harzewski, the Seventh Circuit held that, despite having "cashed out" of the plan, plaintiffs were still "participants" in the plan

ORDER – 6

because they may become eligible to receive plan benefits. The court stated that plaintiffs would receive a plan "benefit" by winning a money judgment against defendants. Id. at 804. Under the Harzewski court's definition of "participant" and plan "benefit," Plaintiffs in the instant case have standing because they fall within the "zone of interests" protected by ERISA. See Air Courier Conf. of Am. v. Am. Postal Workers Union, AFL-CIO, 498 U.S. 517, 523–24 (1991).

Defendants cite Kuntz v. Reese, 785 F.2d 1410 (9th Cir. 1986), cert. denied, 479 U.S. 916 (1986), abrogated in part on other grounds by Kayes v. Pac. Lumber Co., 51 F.3d 1449 (9th Cir. 1995), as contrary controlling authority. Kuntz held that plaintiffs who "cashed out" of a retirement plan did not have standing to bring a claim for damages under ERISA. Kuntz, 785 F.2d at 1411. The court held that the plaintiffs were not eligible to receive "benefits" under the plan because, if successful, the plaintiffs' claim would result in a damage award, rather than an increase in vested benefits. Id.

Kuntz is inapposite. Unlike the plaintiffs in Kuntz, Plaintiffs in the instant case do not seek damages. Rather, Plaintiffs seek equitable relief in the form of the benefits to which they would have been entitled had the plan remained the same. (See 2d Am. Compl., p. 25.) The Supreme Court made clear in LaRue that, at a minimum, plaintiffs seeking equitable relief under ERISA are "participants" as defined in § 1002(7) regardless of whether they have funds remaining in the plan. See LaRue, 128 S. Ct. at 1023, 1026 n.6.

**B.   Schulman Lacks Standing**

Defendants argue that Plaintiff Schulman lacks Article III standing because she did not participate in the Great Western Plan until after the Plan was converted to a cash balance formula on January 1, 1997. (Defendants' Opp., p. 13.) Schulman began employment with Great Western in May 1996. (Carter Decl., Ex. 6, pp. 16–17); The revised Great Western Plan, effective January 1, 1997, states that an employee must have one year of service with the company before he or she is eligible to join the Plan. (Carter Decl., Ex. 9, p. 26.)

The record alone does not support Defendants' claim because Schulman began her employment at Great Western before the revised Plan went into effect. Plaintiffs conceded at oral argument, however, that Schulman did not join the Great Western Plan until after January 1, 1997, when it was converted to a cash benefit plan. Plaintiffs claimed at oral argument that

ORDER – 7

Schulman has standing because she joined the Great Western Plan before the Plan became part of the WaMu Plan on January 1, 1998.

Pension plan administrators are only required to provide notice under ERISA § 204(h) at the time that a plan is amended to provide for a significant reduction in the rate of future benefit accrual. See 29 U.S.C. § 1054(h). In this case, Great Western was required to provide adequate notice regarding the conversion to a cash balance formula on January 1, 1997. There is no evidence that the transition from the Great Western cash balance plan to the WaMu cash balance plan on January 1, 1998 caused any reduction in Plan members' rate of future benefit accrual. ERISA § 204(h) did not require any notice to be given to Plan participants regarding the 1998 transition. Because Schulman was not a member of the Great Western Plan on January 1, 1997, she was not entitled to receive any notice under § 204(h), and did not suffer any injury-in-fact from an alleged lack of proper notice regarding the 1997 conversion. Schulman lacks Article III standing. See Lujan, 504 U.S. at 560.

Defendants did not file a motion to dismiss Schulman for lack of standing. The Court is nonetheless obliged to examine jurisdictional issues such as standing sua sponte. Bernhardt v. County of L.A., 279 F.3d 862, 868 (9th Cir. 2002). The Court sua sponte dismisses Schulman from this action for lack of standing.

Schulman's dismissal from this action does not impact the Court's decision regarding certification of a subclass consisting of former Great Western employees who were entitled to adequate notice under § 204(h) regarding `the January 1, 1997 conversion to a cash balance formula. Plaintiff Buus was indisputably a member of the Great Western Plan as of January 1, 1997, and has standing to act as a representative of the subclass.

**III.     Standard for Certification of Class Actions**

The Court now proceeds to determine whether each proposed subclass meets the requirements for certification of a class action under Rule 23. The Court may certify a class or subclass when all the requirements of Federal Rule of Civil Procedure 23(a) have been satisfied, along with at least one of the conditions in Rule 23(b). Rule 23(a) states that four requisite elements must be established prior to the certification of a class action:

    1.     Numerosity (a class "so numerous that joinder of all members is impracticable")

ORDER – 8

2. Commonality ("questions of law or fact common to the class")

3. Typicality ("the claims or defenses of the representative parties are typical of the claims of defenses of the class")

4. Adequacy ("the representative parties will fairly and adequately protect the interests of the class")

Rule 23(b) permits class certification if (1) separate actions would create a risk of inconsistent adjudications; (2) injunctive or declaratory relief is sought; or (3) common questions predominate over the individual questions and a class action is superior to other methods of bringing the suit.

**IV. Rule 23(a) Issues**

To certify a subclass, the Court must find that all of the four prerequisites in Rule 23(a) of the Federal Rules of Civil Procedure are met. See Fed. R. Civ. P. 23(c)(5); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

**A.  Numerosity – Rule 23(a)(1)**

The prerequisite of numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This condition is met with respect to each subclass, and Defendants do not contest it.

**B.  Commonality – Rule 23(a)(2)**

Rule 23(a)(2) requires that there be questions of law or fact common to the class or subclass. Defendants argued in their opposition to class certification that Rule 23(a)(2) is not satisfied because of the differences in the notices of conversion given to participants in the various plans. The Court has addressed this argument by dividing the proposed class into subclasses for each plan. The members of each proposed subclass presumably received identical notices. (See, e.g., Carter Decl., Ex. 1 (Pacific First notice), Ex. 10 (WaMu notice), Ex. 11 (Great Western notice).) The commonality requirement is met with respect to each proposed subclass. See Fed. R. Civ. P. 23(c)(5).

**C.  Typicality – Rule 23(a)(3)**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). While commonality

ORDER – 9

examines the relationship of facts and legal issues common to class members, typicality focuses on the relationship of facts and issues between the class and its representatives. Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1184 n.12 (9th Cir. 2007).

The typicality requirement is clearly satisfied as to the proposed WaMu, Great Western, Dime, and Pacific First subclasses. Each of these four subclasses has a named representative or representatives in this action (Flor and Schoenleber for WaMu, Buus for Great Western, Weber for Dime, and Plumb for Pacific First) who was a member of the subclass and participated in the pension plan for members of that subclass.

The typicality requirement is not satisfied with respect to the proposed Ahmanson subclass. There is no named plaintiff in this action who was a participant in the Ahmanson Plan and who received the notice given to Ahmanson Plan participants. The Court declines to certify the proposed Ahmanson subclass at this time.

### D.  Adequacy – Rule 23(a)(4)

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. Defendants argue that certification of a class or subclasses is inappropriate under Fed. R. Civ. P. 23(a)(4) because (1) there are conflicts of interest between members of the putative subclasses and (2) four of the named Plaintiffs—Flor, Weber, Schulman, and Schoenleber—will not adequately protect the interests of their respective subclasses. Defendants do not challenge the adequacy of class counsel.

#### 1. Potential Conflicts of Interest

Defendants argue that conflicts of interest exist between current and former employees who are members of the putative class (and, as reformulated by the Court, each proposed subclass). (Defendants' Opp., p. 16.) Defendants do not claim that some members of the proposed subclasses have interests that are directly adverse to those of other members of their subclass. Instead, Defendants argue that if former and current employees recover from the current WaMu Plan, the Plan's resources will be depleted. As a consequence, fewer Plan resources will be available to compensate employees in the future. This is not a concern for

ORDER – 10

former employees, but would potentially concern current employees.

Courts have declined to certify class actions where members of the putative class have a substantial economic conflict going to the subject matter of the litigation, particularly where some members of the putative class oppose the changes plaintiffs seek. See United Indep. Flight Officers, Inc. v. United Air Lines, Inc., 572 F. Supp. 1494, 1500 (N.D. Ill. 1983). In United Independent Flight Officers, for example, the court declined to certify a class where members of different subclasses would likely have had significant variations in the benefits they would have received from the litigation. Id. Another district court declined to certify a class where two types of putative class members would have diametrically opposing interests. Gillis v. Hoechst Celanese Corp., 1992 WL 68333 at *3 (E.D. Pa. 1992).

Courts have typically certified class actions when all members of the class have a similar interest in obtaining a favorable judgment, and where any conflict is speculative or could be best addressed at the remedies stage of the litigation. See, e.g., Soc. Servs. Union v. County of Santa Clara, 609 F.2d 944, 948 (9th Cir. 1979); Amara v. Cigna Corp, 2002 WL 31993224, at * 2 (D. Conn. 2002). The Ninth Circuit specifically holds that "[m]ere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification." Soc. Servs. Union, 609 F.2d at 948.

All members of the proposed subclasses in the instant case have similar interests. Given that the Court has narrowed the definition of the subclasses to include only individuals who were participants in a plan at the time of conversion to a cash balance formula, it appears that the vast majority of class members (if not all class members) will benefit from the litigation if it is successful. Current employees stand to benefit the most from the litigation, as they typically will have more years of service since the plan conversions than retired employees, and will therefore receive more in recalculated benefits. Defendants' concern that the litigation will reduce plan resources (and implicitly, that this will lead WaMu to reduce plan benefits in the future, thereby harming current employees who continue to work at the company) is speculative and unsupported by any facts in the record. The speculative potential for a conflict of interest between current and former employees does not warrant denial of class certification. See Soc. Servs. Union, 609 F.2d at 948.

ORDER – 11

Defendants also argue that conflicts of interest exist between class members who have taken a lump sum distribution of their Plan assets and those who have not. (Defendants' Opp., p. 17.) Defendants argue that those who still have funds invested in the Plan have an interest in keeping the Plan solvent, whereas those who have withdrawn all their assets from the Plan do not. This argument is similar to Defendants' argument above, and fails for similar reasons. Mere speculation that the Plan might become insolvent is inadequate to defeat class certification. See Soc. Servs. Union, 609 F.2d at 948.

### 2. Adequacy of Certain Named Plaintiffs

Defendants argue that Flor, Weber, Schulman, and Schoenleber are not adequate representatives of Plaintiffs' proposed class (and hence, of their respective subclasses) because they would be subject to unique defenses or because of their unfamiliarity with the case.

#### a. Flor is an Adequate Representative

Defendants argue that Plaintiff Flor is not an adequate representative because he will be subject to a statute of limitations defense. (Defendants' Opp., pp. 9–10.) The applicable statue of limitations is either three or six years. (Defendants' Opp., p. 10 n.4; Reply, p. 4 n.9.) "[A]n ERISA cause of action accrues either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied." Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1031 (9th Cir. 2006) (internal quotations and citations omitted). "[A] cause of action accrues when a pension plan communicates a clear and continuing repudiation of a claimant's rights under a plan, such that the claimant could not have reasonably believed but that his benefits had been finally denied." Id. (internal quotations and citations omitted).

Defendants argue Flor knew that the conversion to a cash balance formula reduced his benefits in 1998 and 1999, eight to ten years before filing suit. (Defendants' Opp., p. 10.) Flor's testimony is somewhat contradictory. Flor stated at his deposition that he thought his balance in the pension plan was "low," and lower than what he would have had under the old, non-cash balance plan. (Carter Decl., Ex. 3, p. 228.) Flor later stated that he thought "this [cash balance] plan was really a reduction in benefits." (Id., p. 241.) Flor then "restated" his testimony to say that his benefits "seemed to be low, given the number of years of service, my salary, and the cash balance plan didn't produce the results that I thought it would or I was led to believe by the

ORDER – 12

bank." (Swope Decl., Ex. 3, p. 242.) Flor stated that he had no way to compare his benefits under the cash balance plan to those under the old plan. (Id. at 243.) Flor later stated "yes" when asked whether he thought in 1999 that his account balance was a reduction in benefits. (Carter Decl., Ex. 3, p. 246.) This testimony does not demonstrate that Defendants engaged in a "clear and continuing repudiation" of a right to higher benefits. At most, Flor had a hunch that his accrual of benefits may have been reduced under the cash balance formula compared with the previous final average pay formula, but had no way of knowing for sure. Flor's ERISA claim is not time-barred, and Flor remains an adequate representative of the WaMu subclass.

### b. Weber is an Adequate Representative

Defendants argue that Weber is an inadequate representative because of her unfamiliarity with the case. District courts have, in their discretion, denied class certification when "the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." Kelley v. Mid-America Racing Stables, Inc., 139 F.R.D. 405, 409 (W.D. Okla. 1990) (internal quotations and citation omitted). Other district courts have admonished, however, that "it is inappropriate to attack the adequacy of a class representative simply based on the representative's ignorance of the underlying facts." Rankin v. Rots, 220 F.R.D. 511, 521 (E.D. Mich. 2004). Several decades ago, the Supreme Court remarked that Rule 23 should not be used to "defeat the ends of justice" by facilitating the dismissal of class action complaints involving unsophisticated named plaintiffs. Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 373 (1966). In Surowitz, the Court reversed the dismissal of a class action where the named plaintiff "knew nothing about the content of the suit," id. at 372, but "did know . . . that she had put over $2,000 of her hard-earned money into Hilton Hotels stock [and] that she was not getting her dividends." Id. at 370.

Defendants cite several cases where district courts have found a class representative inadequate due to lack of familiarity with the case. Most of these cases have involved some other underlying facts that made the named Plaintiff particularly inadequate to represent the class. In two of the cited cases, the district courts rejected the same plaintiff, Ronald Kassover, as a representative in securities class actions. See Welling v. Alexy, 155 F.R.D. 654 (N.D. Cal.

ORDER – 13

1994); Kassover v. Computer Depot, Inc., 691 F. Supp. 1205 (D. Minn. 1987). As of 1994, Kassover had appeared 14 times as a class action plaintiff and had been represented by the same attorney all 14 times. See Welling, 155 F.R.D. at 659. In another case cited by Plaintiffs, In re Quarterdeck Office Systems, Inc. Securities Litigation, 1993 WL 623310 (C.D. Cal. 1993), the plaintiffs apparently bought a small number of shares "in an effort to buy a lawsuit." Welling, 155 F.R.D. at 659. Finally, in Gill v. Monroe County Department of Social Services, 92 F.R.D. 14 (W.D.N.Y. 1981), the class representative was removed because she failed to respond to a court order to show cause and "demonstrated her inability to effectively protect the interests" of the subclass members. Id. at 16. None of these extraordinary circumstances exist here.

Weber (1) did not know whether she was a participant in the Dime Plan (Carter Decl., Ex. 7, p. 55); (2) did not know whether she had received a distribution from the WaMu Plan (Id. p. 143); (3) thought she was entitled to notice of a change in the WaMu Plan, rather than the Dime Plan (Id. p. 211); and (4) was unsure what she wanted in terms of remedies (Id. p. 219). Weber was able to summarize what the litigation was about ("WaMu changed our retirement plan without letting us know . . . [t]he impact it would have on our benefits"). (Swope Decl., Ex. 9, p. 173.) She believes that she reviewed the complaint before it was filed, but did not fully understand it. (Id. p. 199).

Weber is an adequate plaintiff. Although Weber may be unsophisticated and not fully aware of the facts of the case, that alone is not a bar to class certification. See Rankin, 220 F.R.D. at 521.

Plaintiffs also allege that Weber was unsure what her obligations were to other members of the class. Weber's deposition testimony demonstrates that she was confused by defendants' questions, but the vagueness of the questions demonstrates that her confusion was justifiable, at least in part. The transcript reads:

```
Q.      Do you owe any duties to people who are not class representatives?
A.      What does that mean?
Q.      Well, I'm asking you, do you know whether you owe any duties to other
        members of the class?
Ms Swope:   Objection, vague.
By the witness:
A.      Well, I don't know what that is, so – I don't think so.
By Ms. Niewoehner:
Q.      Do you have any – as a class representative, do you have any obligations
        that you owe to members of the class?
```

ORDER – 14

1    A.    No.

(Crane Decl., Ex. 7, pp. 220–21.)

The first question is vague to the point that even an attorney would have difficulty providing an answer. The subsequent questions clarify things somewhat, but are still subject to different interpretations. For example, Weber could reasonably interpret the last question as asking whether she owes any obligations to her fellow named plaintiffs. The term "obligations" is also subject to multiple interpretations. The fact that Weber was confused by Defendants' questioning does not demonstrate that she is an inadequate representative. As in Rankin, Weber understood that she has an obligation to assist her attorneys and to provide documentation. (Swope Decl., Ex. 9, p. 220.)

### c.    Schoenleber is an Adequate Representative

Defendants argue that Schoenleber is an inadequate representative. Schoenleber invoked attorney-client privilege when asked certain details about the case during his deposition. He stated that, before he spoke with his attorneys, he did not know what a cash balance plan was and did not know whether certain statements in a notice regarding the transition to a cash balance plan were misleading (Carter Decl., Ex. 12, pp. 70, 96–97, 108.) It is clear from the deposition transcript that Schoenleber has made significant efforts to understand the lawsuit and the bases behind it. He also understands his duties as a class (or subclass) representative. (Swope Decl., Ex. 11, p. 296.) The fact that he did not understand many of the underlying facts of the lawsuit before speaking with his attorneys is not dispositive. See Rankin, 220 F.R.D. at 521. Schoenleber is an adequate representative.

## V.    Rule 23(b) Issues

In addition to satisfying all of the requirements in Federal Rule of Civil Procedure 23(a), a proposed class action must satisfy at least one of the requirements in Rule 23(b). Fed. R. Civ. P. 23(b). Rule 23(c)(5) applies the Rule 23(b) requirements to subclasses.

### A.    Rule 23(b)(1)

Rule 23(b)(1) provides for class litigation if separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members." Fed. R. Civ. P. 23(b)(1)(A). This requirement is met. The members of each

ORDER – 15

proposed subclass all allegedly suffered the same statutory violations and the same lack of notice. If successful on the merits, they will be entitled to the same type of relief. Adjudication of Plaintiffs' claims by different courts carries a substantial risk of varying orders—a risk that is particularly problematic in cases, such as this one, where Plaintiffs request injunctive relief. See, e.g., In re Citigroup Pension Plan ERISA Litg., 241 F.R.D. 172, 179–80 (S.D.N.Y. 2006) (applying Rule 23(b)(1) in the context of an ERISA § 204(h) action and noting that Rule 23(b)(1)(A) "speaks directly to ERISA suits").

### B. Rule 23(b)(2)

Rule 23(b)(2) provides for class litigation if "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs here seek equitable relief in the form of an injunction prohibiting enforcement of the Plan's unlawful provisions. (2d Am. Compl., p. 25.) Plaintiffs also seek equitable relief in the form of a recalculation of the accrued benefits of class members based upon the old, pre cash balance formula for calculating benefits. Id. This relief applies to each subclass as a whole. Rule 23(b)(2) is satisfied. See, e.g., Richards v. FleetBoston Fin. Corp., 235 F.R.D. 165, 174 (D. Conn. 2006) (applying Rule 23(b)(2) in the context of an ERISA § 204(h) action).

## VI. Certification of Subclasses

Based upon the above, the Court certifies the following subclasses in this matter:

I. All participants, whether active, inactive, or retired, their beneficiaries and estates, who were participants in and entitled to accrue benefits under the Washington Mutual Retirement Plan for Employees immediately prior to January 1, 1987, and whose accrued benefits or pension benefits are based in whole or in part on the Washington Mutual Cash Balance Pension Plan's cash balance formula, from January 1, 1987 to the present.

II. All participants, whether active, inactive, or retired, their beneficiaries and estates, who were participants in and entitled to accrue benefits under the Great Western Retirement Plan immediately prior to January 1, 1997, and whose accrued benefits or pension benefits are based in whole or in part on the cash balance formulas of the Great Western Retirement Plan and/or the Washington Mutual Cash Balance Pension Plan, from January 1, 1997 to the present.

ORDER – 16

III. All participants, whether active, inactive, or retired, their beneficiaries and estates, who were participants in and entitled to accrue benefits under the Retirement Plan of Dime Bancorp, Inc. immediately prior to April 1, 2002, and whose accrued benefits or pension benefits are based in whole or in part on the Washington Mutual Cash Balance Pension Plan's cash balance formula, from April 1, 2002 to the present.

IV. All participants, whether active, inactive, or retired, their beneficiaries and estates, who were participants in and entitled to accrue benefits under the Pension Plan for Employees of Pacific First Bank immediately prior to April 1, 1994, and whose accrued benefits or pension benefits are based in whole or in part on the Washington Mutual Cash Balance Pension Plan's cash balance formula, from April 1, 1994 to the present.

**Conclusion**

The Court finds that subclasses are appropriate in this case, limited to individuals who were participants in one of the Plans at the time that such Plan was converted to a cash balance formula. The fact that some named Plaintiffs no longer have assets in the Plan does not preclude them from having standing to bring this action. Schulman, however, lacks standing and is dismissed from this action.

The Court certifies four subclasses, each of which meet the requirements for certification under Rule 23(a). Joinder of all subclass members would be impracticable, fulfilling the numerosity requirement. There are questions of law or fact common to the subclass, fulfilling the commonality requirement. Each certified subclass has a named Plaintiff who is a member of that subclass and presumably received the same notice as the other subclass members, fulfilling the typicality requirement. The adequacy requirement is met because there are no concrete (as opposed to speculative) conflicts of interest between subclass members at this stage of the litigation. All of the named Plaintiffs, except Schulman, are adequate representatives of their respective subclasses. Because there is no named plaintiff who is a member of the proposed Ahmanson subclass, the court declines to certify such a subclass at this time.

Each certified subclass also meets the requirements of Rule 23(b)(1) and (b)(2). Litigation by individual subclass members poses a substantial risk of creating varying or inconsistent orders by different courts. Final equitable relief is appropriate respecting each

ORDER – 17

subclass as a whole.

The Court GRANTS Plaintiffs' motion for class certification in part and DENIES it in part. The Court DISMISSES Schulman from this action for lack of standing.

The clerk is directed to send a copy of this order to all counsel of record.

Dated: July 24th, 2008.

<u>s/ Marsha J. Pechman</u>
Marsha J. Pechman
United States District Judge

ORDER – 18