THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GARY BUUS, et al., individually and on behalf
of all others similarly situated,

      Plaintiffs,

      v.

WAMU PENSION PLAN, et al.,

      Defendants.

No. 07-CV-00903 MJP

**PLAINTIFFS' MOTION AND MEMORANDUM FOR FINAL APPROVAL OF SETTLEMENT, AND PLAN OF ALLOCATION**

**Hearing Scheduled: October 29, 2010 at 9:00 am**

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL AND FACTUAL BACKGROUND.......................................... 1

    A.     Description of Litigation................................................................... 1

    B.     Settlement Negotiations ................................................................... 4

    C.     Terms of Settlement Agreement ...................................................... 4

    D.     Bankruptcy Court and IRS Approval............................................... 7

    E.     Reasons for Settlement .................................................................... 7

III.   ARGUMENT ..................................................................................................... 7

    A.     The Settlement Agreement Should Be Judicially Approved ............... 7

        1.     The Court Has Preliminarily Approved the Settlement........................... 8

        2.     The Forms and Methods of Notice Were Reasonable and
             Satisfied Rule 23 and Due Process ......................................... 8

        3.     The Settlement Was Reached Through Arm's-Length
             Negotiations, and Is Fair, Reasonable, and Adequate ........................... 10

            a.     Strength of the Plaintiff's Case ................................. 11

            b.     Risk, Expense, Complexity, and Likely Duration of
                 Further Litigation ........................................... 11

            c.     The Risk of Maintaining Class Action Status
                 Throughout the Trial Weighs in Favor of Approval.................. 13

            d.     The Amount Offered in Settlement Weighs in Favor
                 of Approval. ............................................... 13

            e.     Extent of Discovery Completed and Stage of
                 Proceedings ................................................ 15

            f.     The Experience and Views of Counsel Weigh in
                 Favor of Approval. ......................................... 15

            g.     The Presence of a Government Participant................................. 16

            h.     The Reaction of Class Members to the Proposed
                 Settlement and Award of Attorneys Fees ................................... 16

    B.     The Plan of Allocation is Fair and Reasonable and Should be
        Approved.......................................................................... 18

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

C.      The Settlement Subclasses Should Be Certified .................................................. 20

IV.      CONCLUSION............................................................................................................. 20

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

# TABLE OF AUTHORITIES

## Cases

*Alberto v. GMRI, Inc.*,
    2008 WL 4891201 (E.D. Cal. Nov. 12, 2008) ..................................................... 13

*Amara v. CIGNA Corp.*,
    559 F. Supp. 2d 192 (D. Conn. 2008), *aff'd*, 348 F. App'x 627 (2nd Cir. 2009),
    cert. granted, 130 S. Ct. 3500 (U.S. June 28, 2010) ........................................ 12, 14

*Charles v. Pepco Holdings, Inc.*,
    513 F. Supp. 2d 47 (D. Del. 2007) (same), *aff'd*, 314 F. App'x 450 (3d Cir.
    2008) ..................................................................................................... 11, 12

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ........................................................................ 8, 18

*Curtiss-Wright Corp. v. Helfand*,
    687 F.2d 171 (7th Cir. 1982) ............................................................................. 18

*Custer v. S. New England Tele. Co.*,
    No. 05-1444, 2008 WL 222558 (D. Conn. Jan. 25, 2008)............................... 11, 12

*Engers v. AT&T*,
    428 F. Supp. 2d 213 (D. N.J. 2006) ................................................................ 11, 12

*Frank v. United Airlines, Inc.*,
    216 F.3d 845 (9th Cir. 2000) .............................................................................. 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................... 10

*Hirt v. Equitable Ret. Plan for Empl., Managers and Agents*,
    441 F. Supp. 2d 516 (S.D.N.Y. 2006).............................................................. 11, 12

*Hurlic v. S. Cal. Gas Co.*,
    539 F.3d 1024 (9th Cir. 2008) ........................................................................ 11, 12

*In re Citigroup Pension Plan ERISA Litig.*,
    470 F. Supp. 2d 323 (S.D.N.Y. 2006) (same), *rev'd, Lonecke v. Citigroup
    Pension Plan*, 584 F.3d 457 (2d Cir. 2009) ..................................................... 11, 12

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    603 F.2d 1353 (9th Cir. 1979) ........................................................................... 18

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................... 9, 10

*In re J.P. Morgan Chase Cash Balance Litig.*,
    460 F. Supp. 2d 479 (S.D.N.Y. 2006)................................................................. 11

PLS' MOT. FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION
(07-CV-00903 MJP) Page - iii

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ................................................................ 14

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................... 19

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996) ............................................................. 9

*Law v. Nat'l Collegiate Athletic Ass'n*,
   108 F. Supp. 2d 1193 (D. Kan. 2000) ..................................................... 19

*Mendoza v. Tucson School Dist. No. 1*,
   623 F. 2d 1338 (9th Cir.1980) .................................................................. 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................. 9

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523, 525 (C.D. Cal. 2004) ...................................................... 8

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*,
   688 F. 2d 615 (9th Cir. 1982) ...................................................... 8, 10, 14

*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 5 (W.D. Wash. 2009) ...................... 13

*Register v. PNC Fin. Serv. Grp., Inc.*,
   477 F. 3d 56 (3d Cir. 2007) ............................................................... 11, 12

*Richards v. FleetBoston Fin. Corp.*,
   427 F. Supp. 2d 150 (D. Conn. 2006) ..................................................... 11

*Rosenblatt v. United Way of Greater Houston*,
   590 F. Supp. 2d 863 (S.D. Tex. 2008) ..................................................... 12

*Thompson v. Ret. Plan for Emp. of S.C. Johnson & Sons, Inc.*,
   663 F. Supp. 2d 700 (E.D. Wis. 2009) .................................................... 12

*Torrisi v. Tucson Elec. Power Co.*,
   8 F. 3d 1370 (9th Cir. 1993) .................................................................... 12

*Weinberger v. Jackson*, No. C-89-2301-CAL, 1991 U.S. Dist. LEXIS at *5-6
   (N.D. Cal. Mar. 19, 1991) ....................................................................... 10

*Wilson v. J.P. Morgan Chase Ret. Plan*,
   No. 06-732 (S.D.N.Y. filed Jan. 31, 2006) ............................................. 12

**Statutes**

29 U.S.C. § 1001 ............................................................................................ 1

ERISA § 204(b)(1)(H)(i) ................................................................................ 2

PLS' MOT. FOR FINAL APPROVAL OF
SETTLEMENT, PLAN OF ALLOCATION
(07-CV-00903 MJP) Page - iv

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

ERISA § 204(h) ....................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... passim

**Other Authorities**

5 James W. Moore, Moore's Federal Practice § 23.164(5) (3d ed. 2004)) ................................ 15

*Manual for Complex Litigation*, § 30.41, at 236-37 (3rd ed. 1995) ............................................ 8

*The Private Securities Litigation Reform Act of 1995: Rebalancing Litigation
    Risks and Rewards for Class Action Plaintiffs, Defendants and Lawyers*,
    51 Bus. Law. 1009 & n.131 (1996) ...................................................................................... 14

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## I.    INTRODUCTION

Plaintiffs Gary Buus, Bryan Buck, Sidney John Flor, Kellie Plumb, Thomas Schoenleber Audrey Schulman, and Margaret Weber (hereinafter "Plaintiffs") respectfully move the Court for an order granting final approval of the proposed Settlement, Plan of Allocation, and certifying the two additional Settlement Subclasses.[1]  As previously set forth in Plaintiffs' motion for preliminary approval, the Settlement was reached through arm's-length negotiations, is an excellent result for the Class, and the Plan of Allocation is fair, reasonable and adequate.  In addition, notice has been provided according to the Court-approved notice plan, and, thus, all conditions for Final Approval have been satisfied.[2]

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    Description of Litigation

On June 12, 2007, Plaintiffs filed a Class Action Complaint against the WaMu Pension Plan ("Plan") and the WaMu Pension Plan Administration Committee ("PAC") (collectively "Named Defendants" or "Defendants") alleging that the Plan's formula for calculating pension benefits violates the Employee Retirement Income Security Action of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").  Specifically, Plaintiffs alleged that the cash balance formula impermissibly caused the rate of benefit accrual to decrease due to the age of the participants.  Plaintiffs also alleged that Defendants violated ERISA by failing to provide adequate notice to participants of the reduction to their future rate of benefit accrual caused by the merger, conversion or amendment of their traditional final average pay pension plans to the WaMu Pension Plan cash balance formula, and by application of the WaMu Pension Plan cash balance formula to individuals whose pension benefits had previously been calculated pursuant to the Great Western Retirement Plan's cash balance formula.  Plaintiffs filed an Amended Class Action Complaint on June 29, 2007.

---

[1]  Capitalized terms not otherwise defined in this memorandum have the same meanings ascribed to them in the Buus Class Action Settlement Agreement, attached at Exhibit A to the Amended Sarko Declaration (Dkt # 273-2).

[2]  It should also be noted that on October 20, 2010, the United States Bankruptcy Court for the District of Delaware entered an Order approving the Settlement in No. 08-12229 ("Chapter 11 Case").

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

On September 27, 2007, Defendants filed a motion to dismiss the Amended Class Action Complaint.  Plaintiffs opposed the motion on November 6, 2007, and the Court heard oral argument on December 7, 2007.  On December 18, 2007, the Court denied Defendants' Motion to Dismiss in part and granted it in part.  Specifically, the Court declined to dismiss Plaintiffs' notice claims alleged under ERISA § 204(h) (Count 2), and dismissed Plaintiffs' age discrimination claims under ERISA § 204(b)(1)(H)(i), and Summary Material Modification ("SMM") and Summary Plan Description ("SPD") claims under ERISA § 102 (Counts 1, 3 & 4).

On April 16, 2008, with leave of Court and after opposition by Defendants, Plaintiffs filed a Second Amended Complaint adding Thomas Schoenleber as an additional Plaintiff.  On April 30, 2008, Defendants filed their answer and affirmative defenses to the Amended Complaint.

On March 20, 2008, Plaintiffs filed a motion for class certification under Fed. R. Civ. P. 23(a) and 23(b)(1) & (2).  Defendants opposed the motion on May 5, 2008, and the Court heard oral argument on July 11, 2008.  On July 24, 2008, the Court granted in part and denied in part Plaintiffs' Motion for Class Certification, and certified four subclasses (the "Certified Class") pursuant to Federal Rules of Procedure 23(a) and 23(b)(1) & (2).

From December 18, 2007 through the discovery cut-off of August 11, 2008, the parties engaged in extensive discovery.  Plaintiffs propounded and responded to five sets of interrogatories, seven sets of requests for production and five sets of requests for admission.  Plaintiffs issued five subpoenas on third parties, reviewed hundreds of thousands of pages of documents, and took and defended over 20 depositions.  The parties consulted with actuarial and linguistic experts, and exchanged four expert witness reports.  The discovery phase of the litigation was hotly contested.  It included Plaintiffs filing three separate motions to compel, and opposing two discovery/scheduling motions filed by Defendants.

On August 7, 2008, the Plaintiffs filed a motion to amend the Court's class certification to include two additional subclasses relating to the amendments resulting in application of the

PLS' MOT. FOR FINAL APPROVAL
PLAN OF ALLOCATION
 (07-CV-00903 MJP) Page - 2

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   WaMu Pension cash balance formula to calculate the pension benefits of individuals who had

2   previously been participants in the Great Western Retirement Plan and the H.F. Ahmanson &

3   Company Retirement Plan.  The motion also sought to add Bryan Buck as a Plaintiff and class

4   representative for the 1999 H.F. Ahmanson Plan subclass.

5          After the completion of fact and expert discovery, and review of the extensive record, the

6   parties filed cross-motions for summary judgment on September 16, 2008, and Plaintiffs began

7   preparations for trial which was scheduled to begin on December 8, 2008.

8          Ten days later, on September 26, 2008, Washington Mutual, Inc. ("WMI"), and WMI

9   Investment Corp. (collectively "the Debtors") filed voluntary petitions for relief under Chapter

10  11 of Title 11 of the United States Code with the United States Bankruptcy Court for the District

11  of Delaware ("the Bankruptcy Court"), as jointly administered, *In re Wash. Mutual, Inc.*, No. 08-

12  12229 ("Chapter 11 Case").  As a result of the Chapter 11 Case, the Court stayed this case on

13  October 2, 2008 for 30 days, directing the parties to file a joint status report at the end of such

14  period.  The parties filed subsequent Joint Status Reports informing the District Court of, *inter*

15  *alia,* the status of the Chapter 11 Cases and corresponding litigation between the Debtors, the

16  FDIC, and JPMorgan Chase, N.A. relating to the disposition of the WaMu Pension Plan.  The

17  parties disputed whether the stay should continue or be lifted.  Prior to the Bankruptcy Bar Date

18  of March 31, 2009, Plaintiffs filed proofs of claim in the Chapter 11 Case with respect to the

19  claims asserted in this case (the "Class Claims").[3]  On October 21, 2010, the Bankruptcy Court

20  entered an Order approving the Settlement, and disallowing the Class Claims based on its

21  approval of the Settlement.  *See* Supplemental Sarko Declaration, Ex. A.

22         On July 13, 2009, the Court held a status conference and requested the parties seek

23  guidance from the Bankruptcy Court as to whether the automatic stay under the U.S. Bankruptcy

24  Code applied to this case.  On September 1, 2009, Plaintiffs filed a motion in the Bankruptcy

25  Court, requesting a ruling that the automatic stay did not apply to this case and that even if it did,

26

---

[3] Claim Nos. 1950, 1951, 1952, 1957, 1959, 1972, 1973, 2504 & 2513 were filed by Plaintiffs, both individually and in their in their capacity as Plaintiffs on behalf of the class in the Buus action.

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   relief from stay should be granted.  That motion was vigorously opposed by the Debtors, who

2   claimed that WMI's bankruptcy estate was implicated by the claims made in this case because

3   WMI is the sponsor of the Plan.

4       In sum, the parties conducted a thorough investigation and discovery of the merits of the

5   claims, the litigation was hard-fought over several years, and the case was in its advanced stages

6   with cross motions for summary judgment pending when a settlement was reached.  A further

7   detailed description of this litigation is described in the Amended Sarko Declaration filed in

8   support of Plaintiffs' Motion for Attorneys' Fees. (Dkt # 273-2).

9   **B.**   **Settlement Negotiations**

10       After Plaintiffs filed their motion to lift the automatic stay in Bankruptcy Court, and in

11   the context of discussing the status of the litigation and bankruptcy motion with Debtors'

12   counsel, Plaintiffs' and Debtors' counsel initiated settlement discussions.  Plaintiffs made a

13   settlement demand in late October 2009, and thereafter the parties engaged in extensive

14   settlement discussions over the next four months.  The parties reached an agreement in principle

15   on February 10, 2010.  Multiple drafts of the Settlement Agreement were exchanged, extensively

16   reviewed, and negotiated by counsel for the Plaintiffs, the Named Defendants, and the Settling

17   Defendants, which includes non-defendant Debtor WMI.  The parties executed the Settlement

18   Agreement on June 17, 2010, bringing to a close the parties' arm's length, hard-fought, and

19   thorough settlement negotiations.  The parties signed an amended Settlement Agreement on June

20   29, 2010, adding Audrey Schulman as a Plaintiff without otherwise changing any material terms

21   of the June 17, 2010 Settlement Agreement.

22   **C.**   **Terms of Settlement Agreement**

23       The complete terms and conditions of the proposed Settlement are set forth in the

24   Settlement Agreement, Exhibit A to the Amended Sarko Declaration (Dkt # 273-2).  The

25   following is a summary of the principal terms of the parties' agreement.

26

PLS' MOT. FOR FINAL APPROVAL
PLAN OF ALLOCATION
 (07-CV-00903 MJP) Page - 4

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1.      **Settlement Amount.**  The parties agreed to settle this action for $20,000,000, net of the settlement administration fees and expenses, Lead Counsel's Court-approved fees and expenses, and case contribution awards to the Named Plaintiffs, as specifically set forth in the Settlement Agreement.  The Settlement Amount is to be allocated as an increase in the liabilities of the WaMu Pension Plan to former and current participants who are members of the Settlement Class pursuant to the Plan of Allocation.

2.      **Settlement Class**.  A non-opt -out class consisting of all persons who are within the scope of the Certified Class, certified by this Court's July 24, 2008 Certification Order and the two additional Settlement Subclasses, set forth in Section III.C.  In general terms, the class is those Plan participants that experienced one of the six sets of amendments resulting in application of a cash balance formula.

3.      **Class Notice and Publication Notice.**  Pursuant to the Settlement Agreement and Preliminary Approval Order, the Class Notice was sent within 60 days of the Court's Preliminary Approval Order by first-class mail to each Class Member's last known address.  *See* Skinner Declaration ¶¶ 5-11. (Dkt. # 272).  Upon mailing the notices to 18,642 class members, 741 were returned.  The Claims Administrator has since used locater services to update addresses for these class members and has remailed notices to all 741 of these class members using updated addresses.  The Claims Administrator was unable to locate the addresses of approximately 250 Class Members.  Although those Class Members did not receive individually mailed notice, the Publication Notice was disseminated broadly via print media, electronic media and several websites in order to increase the likelihood that they would receive notification of the Settlement.  Supplemental Skinner Decl. ¶ 4.  In accordance with Court's Preliminary Approval Order, the Publication Notice was published in the *Seattle Times* on September 28 and 29, 2010, and by electronic publication on the Business Wire on September 24, 2010.  Finally, the Class Notice, the Settlement Agreement, Plaintiffs' Motion for Attorney Fees and supporting papers were

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    posted on several internet websites identified in the Class Notice.  *See* Supplemental Skinner

2    Decl. ¶ 6.

3              4.      **Plan of Allocation.**  The plan or formula of allocation of the Net Settlement

4    Amount is the means by which the Net Settlement Amount will be divided and distributed

5    amongst the Settlement Class.  Prior to the Final Approval Hearing, the parties will submit a list

6    identifying each Class member who will receive a benefit under this Settlement.  This list will be

7    submitted under seal due to the personal and confidential information it will contain.  According

8    to the Plan of Allocation, the Net Settlement Amount will be allocated amongst the Settlement

9    Class members as an Additional Benefit on a per capita basis, calculated as the quotient of (a) the

10    Net Settlement Amount divided by (b) the Aggregate Number of Settlement Class Members who

11    have been identified after reasonable best efforts and whose current address has been ascertained

12    after reasonable best efforts.  *See* Plan of Allocation, attached to Supplemental Sarko

13    Declaration, Ex. B.

14              5.      **Releasees.**  As provided for in Section 1.2(ff) of the Settlement Agreement, the

15    Releasees are the Debtors and their non-Debtor affiliates, the WaMu Pension Plan and all

16    predecessors and successors thereto, the sponsor of the WaMu Pension Plan and any successor

17    plan sponsor and any contributing employer with respect to the WaMu Pension Plan and any

18    successor contributory employer and any plan into which the WaMu Pension Plan is merged,

19    including, but not limited to the WaMu Predecessor Plans, the Plan Trustee, the PAC, the Plan

20    Record Keeper, and all predecessors, successors, parents, subsidiaries, affiliates, divisions,

21    assigns, officers, directors, committees, employees, fiduciaries, administrators, actuaries, agents,

22    insurers, representatives, attorneys, retained experts and trustees of each of them.

23              6.      **Released Claims.**  Released Claims is defined in Section 5.2 of the Settlement

24    Agreement, which include, in general terms, all claims raised or that could have been raised in

25    this action that pertain to the allegations of the Amended Complaint.

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

**D.     Bankruptcy Court and IRS Approval**

2          On October 21, 2010, the Bankruptcy Court entered an Order, pursuant to Rule 9019 of

3    the Federal Bankruptcy Rules and section 105(a) of the Bankruptcy Code, approving the

4    Settlement Agreement and disallowing the Class Claims relating to this case.  *See* Supplemental

5    Sarko Declaration, Ex. A.  The Settlement also requires the Internal Revenue Service's approval

6    of a plan amendment in order to allow the Plan of Allocation of the Net Settlement Amount.

7    WMI submitted this amendment to the IRS for approval on July 1, 2010.  The parties are

8    endeavoring to obtain such approval as soon as possible, though there is no date by which the

9    IRS is required to consider the proposed amendment.

10   **E.     Reasons for Settlement**

11         Plaintiffs and the Defendants have entered this proposed Settlement with an

12   understanding of the strengths and weaknesses of their claims and defenses.  This understanding

13   is based on: (1) the motion practice undertaken by the parties; (2) the investigation, research, and

14   discovery as outlined above; (3) the possibility that either party could prevail at trial; (4) the

15   range of possible recovery; (5) the substantial complexity, expense, and duration of litigation

16   necessary to prosecute this action through trial on liability, and possibly a second trial on

17   damages, post-trial motions, and likely appeals; (6) the significant uncertainties in predicting the

18   outcome of this complex litigation; and (7) the financial condition of Washington Mutual, Inc,

19   which is the sponsor of the WaMu Pension Plan.  Having undertaken this analysis, the Plaintiffs

20   and Defendants have concluded that the Settlement is fair, reasonable, adequate, and should be

21   presented to the Court for approval.

22                                    **III.   ARGUMENT**

23   **A.     The Settlement Agreement Should Be Judicially Approved**

24         Class action settlements are governed by Fed. R. Civ. P. 23(e), which requires (1) court

25   approval of the settlement, (2) the issuance of notice in a reasonable manner to class members

26   who would be bound by the settlement, and (3) a finding by the court following a hearing that

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    the settlement is reached through arm's-length negotiations, and is fair, reasonable, and adequate.

2    *See, e.g., Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal.

3    2004) (citing *Manual for Complex Litigation*, § 30.41, at 236-37 (3rd ed. 1995).  As the Ninth

4    Circuit has instructed:

5    > [T]he court's intrusion upon what is otherwise a private consensual agreement
>    negotiated between the parties to a lawsuit must be limited to the extent necessary

6    > to reach a reasoned judgment that the agreement is not the product of fraud or
>    overreaching by, or collusion between, the negotiating parties, and that the

7    > settlement taken as a whole, is fair, reasonable and adequate to all concerned.

8    *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F. 2d 615, 625

9    (9th Cir. 1982).  The Ninth Circuit has also noted the "strong judicial policy that favors

10   settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v.*

11   *City of Seattle*, 955 F. 2d 1268, 1276 (9th Cir. 1992).

12        **1.      The Court Has Preliminarily Approved the Settlement**

13        On July 27, 2010, the Court preliminary approved of the Settlement.  *See* Preliminary

14   Approval Order (Dkt. # 266).  Based on Plaintiff's detailed preliminary approval papers, which

15   discussed each of the Ninth Circuit factors for evaluating the fairness of a settlement, except one

16   – the reaction of Class members – which was not known in advance of the issuance of notice, the

17   Court preliminarily found that the Settlement was "the product of serious, informed arm's-length

18   and non-collusive negotiations," is "fair, reasonable, and adequate," and "warrant[ed] notice to

19   Class members of a formal fairness hearing."  *Id.* at 4.

20        **2.      The Forms and Methods of Notice Were Reasonable and Satisfied Rule 23
             and Due Process**

21

22        In accordance with the Preliminary Approval Order, Class Members have been provided

23   with ample and sufficient notice of the Settlement, and given an appropriate opportunity to voice

     objections.  The notice plan was reasonable, fully informed Class Members of the lawsuit and

24   Settlement and enabled them to make decisions about their rights.  To satisfy Rule 23, "[f]or

25   non-opt-out cases, such as the ERISA Actions, [all that is required is] such unspecified

26   'appropriate notice' as 'the court may direct.'"  *In re Global Crossing Sec. & ERISA Litig.*, 225

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    F.R.D. 436, 448 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 23(c)(2)(A)).  In addition, "there is no

2    requirement for individualized notice beyond that required by due process."  *Frank v. United*

3    *Airlines, Inc.*, 216 F. 3d 845, 851 (9th Cir. 2000).

4          To satisfy due process, notice to class members must be "reasonably calculated, under all

5    the circumstances, to apprise interested parties of the pendency of the action and afford them an

6    opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

7    306, 314 (1950).  "It is widely recognized that for the due process standard to be met it is not

8    necessary that every class member receive actual notice, so long as class counsel acted

9    reasonably in selecting means likely to inform persons affected."  *In re Prudential Sec. Inc. Ltd.*

10   *P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996).  Thus, "[a] party's capability to provide

11   individual notice does not make such notice mandatory when notice by publication will suffice."

12   *Mendoza v. Tucson School Dist. No. 1*, 623 F. 2d 1338, 1351 (9th Cir.1980).

13         Here, the notice effectuated in this case satisfies the due process and Rule 23

14   requirements.  The parties' notice plan, as approved by the Court and implemented by Lead

15   Counsel, consisted of: (1) mailing the Notice on September 24, 2010 to 18,642 Class Members at

16   their last known addresses provided by the Claims Administrator; (2) publishing the Legal

17   Notice on the *Business Wire* on September 24, 2010, and in *The Seattle Times* on September 28

18   and 29, 2010; (3) creating two dedicated websites, one administered by Lead Counsel and the

19   other administered by the Claims Administrator to provide information to Class Members; and

20   (4) providing toll-free telephone numbers and an email address so that participants may obtain

21   further information regarding the Settlement.  *See* Skinner Decl. ¶¶ 12-15 (Dkt # 272).

22         In sum, the Notice provided detailed information about the Settlement, including: (1) a

23   comprehensive summary of its terms; (2) notice of Lead Counsel's intent to request attorneys'

24   fees, reimbursement of expenses, and case contribution awards for Plaintiffs; and (3) detailed

25   information about the Released Claims.  In addition, the Notice provided information about the

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  Fairness Hearing date, Class Members' rights to object (and deadlines and procedures for

2  objecting), and the procedure to receive additional information.

3         The notice forms and methods employed here are substantially similar to those approved

4  and successfully used in many other ERISA class settlements and "constituted valid, due, and

5  sufficient notice to members of the Class." *Weinberger v. Jackson*, No. C-89-2301-CAL, 1991

6  U.S. Dist. LEXIS at *5-6 (N.D. Cal. Mar. 19, 1991); *see also In re Global Crossing Sec. &*

7  *ERISA Litig.*, 225 F.R.D. 436, 448-49 (S.D.N.Y. 2004) (noting that a notice plan similar to the

8  one proposed here "went well beyond the requirements for the non-opt out ERISA classes").

9  Thus, as the Court has preliminarily found, the Notice and Publication Notice, and manner of

10  dissemination constituted the "best notice practicable under the circumstances" Preliminary

11  Approval Order at 6.  Accordingly, the notice forms and methods satisfy the requirements of

12  Rule 23 and due process.

13     **3.    The Settlement Was Reached Through Arm's-Length Negotiations, and Is
           Fair, Reasonable, and Adequate**

14

15         As set forth previously in the Plaintiffs' preliminary approval papers, the question for the

16  Court is whether the Settlement is "fundamentally fair, adequate and reasonable." *Officers for*

17  *Justice v. Civil Serv. Comm'n*, 688 F. 2d at 625.  In assessing whether a settlement is fair

   adequate and reasonable, the Ninth Circuit has set forth the following factors to balance:
18

19     (1)    Strength of the plaintiff's case;
       (2)    Risk, expense, complexity, and likely duration of further litigation;
20     (3)    Risk of maintaining class action status throughout the trial;
       (4)    Amount offered in settlement;
21     (5)    Extent of discovery completed and stage of the proceedings;
       (6)    Experience and views of counsel;
22     (7)    Presence of a governmental participant; and
       (8)    Reaction of the Class members to the proposed settlement.

23  *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998).  Plaintiffs discussed all but the

24  last factor in detail in their preliminary approval papers.  For the Court's convenience, we will

25  summarize factors 1-7, and address factor 8 in further detail herein.

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### a.      Strength of the Plaintiff's Case

While Plaintiffs have aggressively litigated this case, and assert their claims are viable,
Defendants have hotly contested their claims and would continue to do so at trial.  The parties
interpret the facts developed in discovery and case law differently.  Adding to the uncertainty,
there is little precedential authority in the Ninth Circuit on this type of ERISA disclosure claim,
and other courts in different jurisdictions have reached conflicting interpretations of similar
ERISA § 204(h) claims.  *Compare Hurlic v. S. Cal. Gas Co.*, 539 F. 3d 1024, 1028 (9th Cir.
2008)(reversing dismissal of notice claim); *Richards v. FleetBoston Fin. Corp.*, 427 F. Supp. 2d
150, 167 (D. Conn. 2006) (upholding notice claim); *In re Citigroup Pension Plan ERISA Litig.*,
470 F. Supp. 2d 323, 341 (S.D.N.Y. 2006) (same), *rev'd, Lonecke v. Citigroup Pension Plan*,
584 F. Supp. 2d 457 (2d Cir. 2009); *In re J.P. Morgan Chase Cash Balance Litig.*, 460 F. Supp. 2d
479, 488-491 (S.D.N.Y. 2006) (same), *with Register v. PNC Fin. Serv. Grp., Inc.*, 477 F. 3d 56,
73 (3d Cir. 2007) (affirming dismissal of § 204(h) claim); *Custer v. S. New England Tele. Co.*,
No. 05-1444, 2008 WL 222558 (D. Conn. Jan. 25, 2008)(dismissing notice claim); *Charles v.
Pepco Holdings, Inc.*, 513 F. Supp. 2d 47 (D. Del. 2007) (same), *aff'd,* 314 F. App'x 450 (3d Cir.
2008); *Engers v. AT&T*, 428 F. Supp. 2d 213 (D. N.J. 2006) (same); *Hirt v. Equitable Ret. Plan
for Empl., Managers and Agents*, 441 F. Supp. 2d 516 (S.D.N.Y. 2006) (same).  There are a
number of outstanding legal issues briefed in the pending summary judgment motions that could
be adjudicated in Defendants' favor, in which case Plaintiffs risk recovering nothing.  Thus, the
outcome of continued litigation is far from certain.  Accordingly, the overall strength of the case
and the substantial recovery that will be obtained under the Settlement supports final approval of
the proposed Settlement.

### b.      Risk, Expense, Complexity, and Likely Duration of Further Litigation

This case is risky and complex, both factually and legally, and would be expensive if
further litigation is required.  As an initial matter, and as noted above, there is the risk that
Plaintiffs might not prevail if they were to litigate the merits of their claims.  In fact, only one

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

case involving allegations about a failure to provide notice pursuant to ERISA § 204(h) in connection with a cash balance conversion has resulted in a judgment for Plaintiffs, and that case is currently on appeal to the U.S. Supreme Court. *Amara v. CIGNA Corp.*, 559 F. Supp. 2d 192 (D. Conn. 2008), *aff'd*, 348 F. App'x 627 (2nd Cir. 2009), *cert. granted*, 130 S. Ct. 3500 (U.S. June 28, 2010) (No. 09-804).  Many more cases have been dismissed in favor of defendants, or resulted in no- or low-cash settlements. *Register v. PNC Fin. Serv. Grp., Inc.*, 477 F. 3d 56, 73 (3d Cir. 2007) (affirming dismissal of § 204(h) claim); *Hurlic v. S. Cal. Gas Co.*, No. 05-05027 (C.D. Cal. filed July 8, 2005) (settled); *Custer v. S. New England Tele. Co.*, No. 05-1444, 2008 WL 222558 (D. Conn. Jan. 25, 2008) (dismissing notice claim); *Charles v. Pepco Holdings, Inc.*, 513 F. Supp. 2d 47 (D. Del. 2007) (same), *aff'd*, 314 F. App'x 450 (3d Cir. 2008); *Engers v. AT&T*, 428 F. Supp. 2d 213 (D. N.J. 2006) (same); *Hirt v. Equitable Ret. Plan*, 441 F. Supp. 2d 516 (S.D.N.Y. 2006) (same); *In re Citigroup Inc.*, 470 F. Supp. 2d 323 (S.D.N.Y. 2006) (upholding § 204(h) claim), *rev'd*, *Lonecke v. Citigroup Pension Plan, Inc.*, 584 F. 3d 457 (2d Cir. 2009); *Wilson v. J.P. Morgan Chase Ret. Plan*, No. 06-732 (S.D.N.Y. filed Jan. 31, 2006) (settled, injunctive relief only); *Rosenblatt v. United Way of Greater Houston*, 590 F. Supp. 2d 863 (S.D. Tex. 2008) (dismissing notice claim); *Thompson v. Ret. Plan for Emp. of S.C. Johnson & Sons, Inc.*, 663 F. Supp. 2d 700 (E.D. Wis. 2009) (same).

In addition, the potential expense and duration of trial and appeals would be substantial. The parties estimated that the trial on liability would take two weeks.  Given the bifurcation of this case, the parties would have had to litigate a separate damages trial if successful on liability. The calculation of damages would require actuarial analysis for over 18,000 class members. Moreover, a judgment at both the liability and damages trials would likely be appealed by the losing party increasing the duration and expense further.

Finally, WMI's financial condition, as a debtor in bankruptcy, increases the risk of further litigation. *See Torrisi v. Tucson Elec. Power Co.*, 8 F. 3d 1370 (9th Cir. 1993)(bankrupt company's financial condition was "predominate" factor in approving settlement given the risks

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

of further litigation); *Pelletz v. Weyerhaeuser Co.,* 255 F.R.D. 5 (W.D. Wash. 2009) (approving settlement designed to work within defendant's cash flow limitations).  Even if Plaintiffs were able to obtain a large judgment in this case, their ability to collect on the judgment is uncertain in light of the Chapter 11 Case.  In sum, consideration of the risk, complexity, expense, and likely duration of further litigation all weigh in favor of approving the Settlement.

### c. The Risk of Maintaining Class Action Status Throughout the Trial Weighs in Favor of Approval.

Where "[t]he court is unaware of any specific difficulty in maintaining class-action status in [a] case were the matter to continue to trial . . . the court will not consider this factor for settlement purposes." *Alberto v. GMRI, Inc.,* 2008 WL 4891201, at *9 (E.D. Cal. Nov. 12, 2008) (citation omitted).  Here, Plaintiffs believe that the class certification order was properly decided and they do not face any serious risk of decertification.  Accordingly, in Plaintiffs' view, this factor does not apply.

### d. The Amount Offered in Settlement Weighs in Favor of Approval.

The $ 20,000,000 Settlement represents a substantial recovery of the participants' potential damages.  In this case, there is a wide range of potential damages if the case were litigated to its conclusion.  The case law is far from clear regarding the appropriate damages methodology.  A home run for Plaintiffs – i.e., a judgment in their favor with respect to each of the certified subclasses, and a determination that Plaintiffs' damages methodology is correct – could result in a judgment in the range of $142 to $208 million.  At the other end of the spectrum is the possibility that Defendants would prevail on their legal arguments to defeat liability entirely.  This would obviously result in no recovery for Plaintiffs.  It is difficult to predict where this case would fall on the spectrum, though Plaintiffs recognize that there is no precedent for the home run result described above, and ample precedent for a result at the opposite end of the spectrum.  Plaintiffs also must contend with the fact that the bankruptcy proceedings make the prospect of recovering a judgment at the high end of the damages range more difficult or unlikely to be recoverable.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1        In the end, Plaintiffs are mindful that "[t]he very essence of a settlement is compromise,

2   "a yielding of absolutes and abandoning of highest hopes"." *Officers for Justice*, 688 F.2d at 624

3   (citation omitted).  Here, the settlement is an excellent result in light of the circumstances.  First,

4   the proper damages methodology is far from clear.  Though Plaintiffs have advocated that the

5   measure of damages in this case is the benefit that the participants would have received under the

6   benefit formula in place prior to the challenged plan amendment, Plaintiffs are not aware of any

7   court that has applied this methodology.  In fact, in *Amara* – the one published decision entering

8   judgment for plaintiffs on a similar ERISA § 204(h) claim, the court explicitly rejected the

9   damages theory advocated here, and instead ordered a remedy based on losses due to wear away,

10  which is a significantly lesser damages calculation.  *Amara v. CIGNA Corp.*, 559 F. Supp. 2d

11  192 (D. Conn. 2008), *aff'd,* 348 F. App'x 627 (2nd Cir. 2009), *cert. granted*, 130 S. Ct. 3500

12  (U.S. June 28, 2010) (No. 09-804).  That judgment has been stayed pending appeal.  *Id.* at 223.

13  Hence, there is significant risk that Plaintiffs' damages methodology would not be accepted in

14  this case.

15       Nonetheless, if Plaintiffs were to prevail on all counts, and persuade the Court to accept

16  their damages methodology, the Settlement represents 9.6% to 14.1% of total possible losses.  If

17  Plaintiffs were to prevail on some claims but not others, or calculate damages under a less

18  favorable methodology, the recovery would represent a higher percentage of the losses that

19  would be obtained at trial.  Either way, the Settlement is fair, reasonable and adequate.  *See*, *e.g.*,

20  Richard M. Phillips & Gilbert C. Miller, *The Private Securities Litigation Reform Act of 1995:*

21  *Rebalancing Litigation Risks and Rewards for Class Action Plaintiffs, Defendants and Lawyers*,

22  51 Bus. Law. 1009, 1029 & n.131 (1996) (typical recoveries are within range of 7-11% of

23  claimed losses); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000)

24  (approving settlement that was one sixth of the plaintiffs' potential recovery).

25

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    Once the potential recovery is discounted for litigation risk, and the risk that a large

2    judgment would be difficult to collect due to WMI's bankruptcy, the settlement amount clearly

3    weighs in favor of approving the Settlement.

4         **e.        Extent of Discovery Completed and Stage of Proceedings**

5    The extent of discovery conducted helps to determine the parties' grasp of the strengths

6    and weaknesses of the case.  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (citing Manual

7    for Complex Litigation § 30.42 (3d ed. 1995).  Approval of a settlement is more likely if the

8    settlement was reached after careful investigation and consideration of the "legal and factual

9    issues involved in the case."  *Id.* (quoting 5 James W. Moore, Moore's Federal Practice §

10   23.164(5) (3d ed. 2004).

11   Here, Plaintiffs completed discovery, reviewed hundreds of thousands of pages of

12   documents, exchanged expert reports, and filed cross-motions for summary judgment before the

13   parties started settlement negotiations.  Plaintiffs agreed to the terms of the Settlement based on a

14   full assessment of the strengths and weaknesses of their case ascertained during the litigation.

15   This factor weighs in favor of final approval of the Settlement.

16        **f.        The Experience and Views of Counsel Weigh in Favor of Approval.**

17   Counsel involved in the case have extensive experience in handling complex class action

18   cases, and ERISA class actions in particular.  Keller Rohrback L.L.P. is a national leader in

19   ERISA class action litigation, and has served as lead counsel in dozens of ERISA cases.  The

20   firm also has served as lead or co-lead counsel in numerous other types of class actions including

21   in the areas of consumer protection, securities fraud, and antitrust litigation.  *See* Amended Sarko

22   Decl., Dkt No. # 273-2, Ex. D (firm resume).  Based on their experience and the specific facts of

23   this case, Lead Counsel have concluded that the Settlement is fair, reasonable, and adequate.

24   This factor also supports final approval of the Settlement.

25

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### g.    The Presence of a Government Participant

The Government is not a formal participant in this case.  Consequently, this factor does not apply.  Nevertheless, the Settlement requires the Internal Revenue Service's approval of a plan amendment in order to facilitate the Plan of Allocation of the Net Settlement Amount.  *See* Section II.D, *supra.*

### h.    The Reaction of Class Members to the Proposed Settlement and Award of Attorneys Fees

A total of 18,642 notices were mailed to Class Members.  The deadline for objections to the Settlement was October 15, 2010.  To date, Lead Counsel and the Claims Administrator have received nearly 800 website hits, almost 500 telephone inquiries, and dozens of email inquiries.  *See* Supplemental Sarko Declaration ¶ 4; Supplemental Skinner Declaration ¶ 5 -6.  Of the over eighteen thousand Class Members, only ***one person*** has submitted an objection.  *See* Brach Objection, (Dkt. # 274).

Mr. Brach's objection is based on (1) the timing of the notice; and (2) the amount of Mr. Brach's annuity pension benefit paid to him by the WaMu Pension Plan.  With regard to the timing issue, Mr. Brach was timely mailed his Notice on September 24, 2010 by First Class Mail according to the Court-ordered notice plan.  *See,* Skinner Declaration, filed herewith.  With regard to the substance of his objection, Lead Counsel has carefully reviewed Mr. Brach's objection and engaged in lengthy and thorough discussions with his counsel regarding the Settlement and its potential impact on his claims.  The crux of Mr. Brach's objection is not related to or precluded by the release of claims in this case under the Settlement Agreement.

Mr. Brach's objection is based on the manner in which the WaMu Pension Plan calculated the amount of his pension benefit payment.  The issue arose in February 2010 as a result of an internal audit whereby WMI allegedly realized it had overpaid Mr. Brach's monthly annuity by $2464.60 a month.  (It had paid Mr. Brach a pension benefit of $2888.43/month when he allegedly was due payment on his single life annuity of $423.83/month).  His annuity payment is based on his participation in the H.F. Ahmanson Retirement Plan, and specifically the

PLS' MOT. FOR FINAL APPROVAL
PLAN OF ALLOCATION
 (07-CV-00903 MJP) Page - 16

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   amount of his vested pension benefit as of 1994, when he ceased working for Ahmanson.  The

2   H.F. Ahmanson cash balance merger and conversion to the WaMu Pension Plan did not occur

3   until 1999.  Thus, these events are not relevant to Mr. Brach's dispute regarding the amount of

4   his vested benefit based on his employment by Ahmanson through 1994.  Instead, based on the

5   documents submitted by Mr. Brach in support of his objection, and as we understand based on

6   conversations with his counsel and counsel for Defendants, it appears that the crux of the issue is

7   an alleged miscalculation of benefits which pre-dates the conversion of the H.F. Ahmanson

8   Retirement Plan to the WaMu Pension Plan cash balance formula in 1999 that is the subject of

9   this case.  In fact, Mr. Brach is currently pursuing the WaMu Pension Plan's claims procedures

10   to contest the suspension of his payments under the plan, which concerns the same issue he

11   raises in his objection to the Settlement.

12        As Lead Counsel explained to counsel for Mr. Brach, the Settlement Agreement, which

13   was carefully negotiated by the parties, expressly does not impact such claims.  As set forth in

14   § 5.2 of the Settlement Agreement:

> The Released Claims do not include (i) unrelated claims for vested benefits or (ii)
> claims based on improper benefit calculations not related to the causes of action
> asserted or that could have been asserted in the Amended Complaint, the Class
> Claims or the Employee Claims.

Settlement Agreement, Ex A to Amended Sarko Declaration (Dkt. # 273-2).  Accordingly, the

Settlement will not impact claims Mr. Brach may have against the WaMu Pension Plan based on

the alleged miscalculation of benefits described in the supporting materials he submitted with his

objection.

        To the extent that Mr. Brach intends to assert an age discrimination claim or an ERISA §

204(h) notice claim against Defendants based on the 1999 amendments relating to the Ahmanson

Retirement Plan, there is no question that these claims would be barred by the Settlement.

Plaintiffs note that Mr. Brach's objection provides no reasoned basis for why the Settlement does

not fairly and adequately release the Class' age discrimination and ERISA §204(h) claims,

except his objection to the reduction in his annuity payment.  While he claims that his portion of

PLS' MOT. FOR FINAL APPROVAL
PLAN OF ALLOCATION
 (07-CV-00903 MJP) Page - 17

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   the Settlement will not adequately compensate him for the pension losses he experienced, it

2   appears that the losses he describes were the result of an unrelated miscalculation of benefits.

3   The Settlement Agreement does not bar, and, instead, expressly carves out, his ability to pursue

4   this claim.  Therefore, Lead Counsel submit, respectfully, that Mr. Brach's objection is unrelated

5   to the Settlement and therefore can provide no basis for declining to approve the Settlement.

6          Plaintiffs note as well that no Class Members have objected to Lead Counsel's Motion

7   for Award of Attorneys' Fees, Expenses and Case Contribution Awards, filed on October 4,

8   2010.  Thus, given that only one Class Member has objected to the terms of the Settlement, and

9   the crux of his objection is unrelated to the terms of the Settlement and that his ability to pursue

10  that claim is in no way barred by the Settlement, the reaction of Class Members also strongly

11  supports approval of the Settlement.

12  **B.      The Plan of Allocation is Fair and Reasonable and Should be Approved**

13         Plaintiffs further respectfully request that the Court approve the proposed Plan of

14  Allocation for distribution of the Net Settlement Amount.  A district court has broad supervisory

15  powers with respect to allocating a class action settlement and wide latitude in determining what

16  to consider in approving a settlement allocation.  *In re Equity Funding Corp. of Am. Sec. Litig.*,

17  603 F. 2d 1353, 1363 (9th Cir. 1979).  The Court has discretion in allocating settlement funds,

18  and an allocation will be upheld unless there has been an abuse of discretion.  *Curtiss-Wright*

19  *Corp. v. Helfand*, 687 F. 2d 171, 175 (7th Cir. 1982).  This is because allocation of a fixed

20  settlement fund "among competing complainants is a traditional equitable function…using

21  'equity' to denote not a particular type of remedy,procedure, or jurisdiction but a mode of

22  judgment based on broad ethical principles rather than narrow rules."  *Id*. at 174 (citations

23  omitted).

24         Like the Settlement, the Plan of Allocation should be "fair, reasonable and adequate."

25  *Class Plaintiffs v. City of Seattle*, 955 F. 2d at 1284-5.  Courts give "substantial weight" to the

26  opinions of experienced counsel regarding the fairness of an allocation.  *Law v. Nat'l Collegiate*

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    *Athletic Ass'n*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000).  "The adequacy of an allocation plan

2    ordinarily turns on whether counsel has properly apprised itself of the merits of all claims, and

3    whether the proposed apportionment is fair and reasonable in light of that information." *Id.*

4    (citing *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

5         Here, the Plan of Allocation reflects Lead Counsel's informed consideration of the

6    relevant legal and factual matters pertaining to Class Members' claims.  This case involves five

7    separate conversions and amendments from final average pay plans to cash balance formulas,

8    and one conversion from the Great Western cash balance plan to the WaMu Pension Plan.  While

9    Plaintiffs contend that the amendments at issue resulted in divergent amounts of reductions in

10   future benefit accrual for different participants, Lead Counsel determined that a per capita

11   allocation was fair given the nature of reductions experienced by the participants.  Moreover, a

12   per capita distribution was favored because a *pro rata* type allocation would be extremely time

13   consuming and expensive due to the number of plans involved, the length of the Class Period,

14   and the fact that the status of the data (which goes back more than 20 years and includes data

15   from the acquisitions of four different banks), would not feasibly permit an accurate and

16   equitable calculation of *pro rata* recoveries.  In the interest of obtaining the greatest recovery for

17   the Class, under the Plan of Allocation, Lead Counsel propose to distribute the Net Settlement

18   Amount on a per capita basis to avoid timely and expense actuarial analysis, which would be

19   required if the distribution was instead made on a individual *pro rata* basis.

20        The Plan of Allocation is fair.  No Class Member or group of Class Members is singled

21   out for either disproportionately favorable or unfavorable treatment; all participate and receive an

22   additional benefit pursuant to the Plan of Allocation in the same manner.  Furthermore, no funds

23   "revert" to Defendants as a result of the Plan of Allocation.  Lead Counsel has received no

24   objections to the proposed Plan of Allocation.  Accordingly, Lead Counsel believes the proposed

25   Plan of Allocation is fair, reasonable, and not unduly complicated or expensive.

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**C.     The Settlement Subclasses Should Be Certified**

By Order dated July 24, 2008, this Court granted in part and denied in part Plaintiffs'

motion for class certification, and certified four subclasses (the "Class Certification Order," Dkt.

#127).  Plaintiffs filed a motion to add two new subclasses on August 8, 2008.  (Dkt. #138).

Plaintiffs now request the Court, for purposes of Settlement only, to certify the these two

subclasses (the "Settlement Subclasses") that were the subject of the pending motion, with the

exception that the parties' Settlement does not allow double recovery for any class members who

are members of more than one subclass.  The Settlement Subclasses are:

> (i) all participants, whether active, inactive or retired, their beneficiaries and
> estates, who were participants in and entitled to accrue benefits under the H.F.
> Ahmanson & Company Retirement Plan immediately prior to July 1, 1999, and
> whose accrued benefits or pension benefits are based in part on the WaMu
> Pension Plan's cash balance formula, from July 1, 1999 to the present; and (ii) all
> participants, whether active, inactive, or retired, their beneficiaries and estates,
> who were participants in and entitled to accrue benefits under the Great Western
> Retirement Plan immediately prior to January 1, 1998, and whose accrued
> benefits or pension benefits are based in whole or in part on the WaMu Pension
> Plan's cash balance formula, from January 1, 1998 to the present, but only with
> respect to such participants not described in subsection VI(II) of the Court's July
> 24, 2008 Order Granting Class Certification at p. 16. (Dkt. #127).

Here, for the reasons set forth in greater detail in Lead Counsel's previously filed motion

for class certification, motion to amend class certification, and motion for preliminary approval,

Lead Counsel respectfully submit that the proposed Settlement Subclasses also satisfy the

requirements of Fed. Civ. P. 23.  (*See* Dkt # 127, 138 & 265)  The Court has preliminarily

certified the two additional subclasses in its Preliminary Approval Order at ¶¶ 1-3.  Accordingly,

Plaintiffs will not repeat that discussion here.  Final certification, for purposes of settlement, is

appropriate to allow the Settlement Class members to partake of the benefits of the Settlement,

and should be granted.

## IV.    CONCLUSION

For the reasons discussed above, the Settlement is a fair, adequate, and reasonable

resolution of the claims against Defendants in this complex and contested ERISA class action.

Thus, Plaintiffs respectfully ask the Court to grant their motion and to enter the proposed Final

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  Approval Order which (1) grants final approval of the proposed Settlement; (2) approves the

2  Plan of Allocation; and (3) certifies the two Settlement Subclasses.

3       DATED this 22nd day of October, 2010.

4

5                                 KELLER ROHRBACK L.L.P.

6

7                          By /s/ Karin B. Swope

8                             Lynn Lincoln Sarko, WSBA #16569
                           Derek W. Loeser, WSBA #24274

9                             Amy Williams-Derry, WSBA #28711
                           Karin B. Swope, WSBA #24015

10                             Gretchen S. Obrist, WSBA #37071
                           1201 Third Avenue, Suite 3200

11                             Seattle, WA  98101
                           (206) 623-1900

12                             (206) 623-3384 (FAX)
                           lsarko@kellerrohrback.com

13                             dloeser@kellerrohrback.com
                           awilliams-derry@kellerrohrback.com

14                             kswope@kellerrohrback.com
                           gobrist@kellerrohrback.com

15                             ***Attorneys for Named Plaintiffs and the
                           Subclasses***

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

### CERTIFICATE OF SERVICE

2

        I hereby certify that on October 22, 2010, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system, which will send notice of such filing to all known

4

counsel of record, listed below:

5

        Ladd B. Leavens, Fred B. Burnside, Anne E. Rea, Danielle J. Carter and Rachel Blum

6

Niewoehner.

7

        DATED this 22nd day of October, 2010.

8

9

                                        s/ Karin B. Swope
                                        Derek W. Loeser, WSBA #24274
10                                       KELLER ROHRBACK L.L.P.
                                        1201 3rd Avenue, Suite 3200
11                                       Seattle, WA  98101
                                        Tel:  (206) 623-1900
12                                       Fax:  (206) 623-3384
                                        kswope@kellerrohrback.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLS' MOT. FOR FINAL APPROVAL
PLAN OF ALLOCATION
 (07-CV-00903 MJP) Page - 22

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384